[No. 1289.  Decided June 27, 1894.]

MICHAEL COONEY, *Respondent*, v. THE GREAT NORTH-ERN RAILWAY COMPANY, *Appellant*.

MASTER AND SERVANT — INJURY TO EMPLOYE — EVIDENCE — NON-SUIT.

The plaintiff in an action for damages for injuries received through defendant's negligence should be non-suited when the evidence shows that plaintiff was a section hand working for defendant, that he with others had been ordered to repair to a certain railroad crossing at three o'clock in the morning to unload rails from a train that would arrive there, that they were proceeding there at the appointed time upon a hand car, and could see the headlight of the engine to the train when a mile and a half from the crossing, that the train started up without sounding a bell or whistle, and, coming down grade noiselessly at the rate of three or four miles an hour, collided with the hand car, resulting in plaintiff's injury. (DUNBAR, C. J., and SCOTT, J., dissent.)

*Appeal from Superior Court, Spokane County.*

*C. Wellington,* and *Jay H. Adams,* for appellant.
*Hyde & Reagan,* and *W. S. Glass,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This action was brought by the respondent to recover damages for personal injuries alleged to have been occasioned by the negligence of the appellant. It appears that on the 14th and 15th days of October, 1892, the respondent was in the employ of the railroad company in the capacity of a section hand, and was working on the line of railway which the company was then constructing in this state, west of the city of Spokane, under the direction of John Daly, his section foreman. The section house used by Daly and his men, and also by another section foreman by the name of Charles Mann and his crew, was situated a mile and a half east of the Seattle crossing on the line of appellant's road. Between two and three o'clock in the morning of October 15, 1892, the said foreman received a telegram from one Burke, appellant's assistant roadmaster, dated the day previous, stating: ''Be at Seattle crossing at three o'clock to-morrow morning to unload steel.'' Another telegram was also received the same night from the roadmaster in reference to unloading ties, but it is not material in this case as it does not appear that anything was done in response thereto. Some time before three o'clock, in obedience to the first mentioned dispatch, Daly and Mann, together with five section hands, among whom was the respondent, got upon a hand car at the section house and started for the crossing indicated in the telegram. The train carrying the steel came from the west and arrived at the crossing before the time at which the men from the section house were requested to be there. The steel was immediately unloaded and about three o'clock the train started east, and had proceeded five or six hundred feet when a collision occurred between it and the hand car, whereby the respondent was thrown against the pilot of the engine with such force that the ulna of his left arm was fractured.

This injury, the respondent claims, was the result of the negligence of the appellant in thus running its train of cars against and upon him, and in causing the said train and hand car to run into each other.   No other act of negligence is alleged in the complaint.   The case was tried by a jury, and there was a verdict and judgment for the plaintiff, and the defendant brings the cause here for review by appeal.

At the close of the plaintiff's testimony the defendant moved for a non-suit for the reasons:

"(1) That the testimony introduced shows that the negligence complained of was not the act of the defendant; (2) that the evidence shows that the plaintiff, by his contract of employment, assumed the risk incident to the same, and that the accident complained of was one of the incidents thereto; (3) that the evidence shows that the act of the plaintiff himself contributed to the cause of the injury complained of."

The court denied the motion, and the appellant insists that in so doing it committed error.

We are firmly convinced that the motion should have been sustained.   The testimony introduced by the plaintiff shows that when the men got upon the hand car at the section house, the train, consisting of a locomotive and several freight cars, was standing at the crossing with the head light of the locomotive burning so brightly that it was constantly seen by the men on the hand car from the place of their departure until the collision occurred.   Upon this point there is no conflict whatever in the testimony. The witnesses for the respondent also testified substantially that, notwithstanding they were looking at the head light during all the time the hand car was in motion, they could not discover the approach of the train until it was too late to avoid the casualty; that the train was moving slowly on a down grade, and making no noise, and that they heard no whistle or ringing of the bell when it started.   It also

appears from the evidence that the hand car was running at a "lively" rate of speed and made a good deal of noise, which may have been the reason why the train was not heard.

It further appears that the men on the hand car, seeing that they were near the train, were about to stop the car and remove it from the track, and had already begun to apply the brakes when it collided with the engine. There were two white lights on the front end of the hand car, but neither the lights nor the car were seen by the engineer on the locomotive before the collision. The night was dark and foggy and the train of the appellant, which was an ordinary construction train, was moving at the rate of only three or four miles an hour. The hand car was not thrown from the track by the collision, and it does not appear that any one thereon but the respondent received any considerable injury.

Upon this state of facts we are aware of no rule of law, applicable to this case, which will justify the denial of the motion for a non-suit. It was not claimed that the respondent was injured by reason of any negligent act on the part of any person with him on the hand car. But it was claimed that, inasmuch as he was requested to proceed to the crossing at a specified time, and assist in unloading steel, it was the personal duty of the railroad company to provide a clear and unobstructed track for his hand car until it reached its destination, and that he had a right to assume that that duty would be performed by the company, and that its train would not leave the crossing before his arrival.

But it will be seen that there is nothing in the telegram stating that the train would wait for the section men at the crossing, or upon which any such assumption could reasonably be predicted. The train was engaged in hauling rails and ties for distribution along the line of the road where-

ever required, and there was just as much reason to conclude, for aught that appears in the telegraphic order, that the cars to be unloaded at the crossing would be left there and the train proceed on its journey as there was to assume that the train would not move until the arrival of the section men. In our judgment it was wholly unreasonable to presume that the operation of the train would be suspended until the section men arrived at the crossing. The men on the hand car had no more reason to rely upon having a clear track for their journey than they would have had if they had traveled on foot. A hand car can be quickly and easily removed from the track, and we believe it is universally considered to be the duty of those who are required to use them to so remove them whenever it may be necessary to do so in order to permit the passage of ordinary trains of cars.

But if we were to concede that it was negligence on the part of appellant to permit its train to leave the crossing before the arrival of the respondent, the motion for a nonsuit should nevertheless have been granted, for the reason that it is manifest from the evidence that the respondent's own want of care contributed to produce the injury of which he complains. If the respondent had been in the exercise of that degree of prudence and caution which it was his duty to use under the circumstances, it is hardly possible to believe that he would have been injured. The train with which he came in contact was in plain view for a distance of a mile and a half, and was seen, or could have been seen by him, and if he failed to discover that it had left the station and thereby exposed himself to danger, surely the railroad company ought not to be required to respond in damages for the injuries resulting from his own misjudgment, especially in the absence of proof that the train was negligently operated. We think that the very nature of the respondent's employment imposed upon him

the duty to look out for trains passing over the road, and to avoid obstructing their passage by the hand car which was furnished for his use and convenience in the prosecution of his work.

Again, the testimony of the respondent himself shows that he had had several years experience in the construction of railroads, and therefore must have been familiar with the risks and dangers incident to such business.    These risks he assumed when he engaged in the employment, including the negligence of fellow servants.

As what we have already said disposes of this case, it is not necessary to enter into a discussion of the question as to whether the assistant roadmaster and the conductor of the train were the representatives of the railway company. The appellant called the two brakemen who were on the train at the time of the accident, as witnesses in its behalf, both of whom testified positively that the engineer blew the whistle before starting the train, in the ordinary way, and that Burke, the assistant roadmaster, was on the train and that the conductor was there also.    And that was substantially all of the evidence adduced on behalf of the appellant, except that which related to the character of the injury received by the respondent.    At the close of the proofs the evidence, together with every legitimate inference that might have been drawn therefrom, was so manifestly insufficient to authorize a verdict for the plaintiff that the case should have been taken from the jury, in accordance with the request of the defendant.

The judgment is reversed, and the cause remanded with directions to sustain the defendant's motion for a non-suit.

HOYT and STILES, JJ., concur.

DUNBAR, C. J., and SCOTT, J., dissent.