[No. 4303.   Decided May 6, 1903.]

JOHN McHUGH, *Appellant*, v. NORTHERN PACIFIC RAIL-
WAY COMPANY *et al., Respondents.*

MASTER AND SERVANT — TORTS OF SERVANT — JOINT LIABILITY.

An action for tortious negligence may be maintained against
the master and his employee jointly, where the injury was
caused by the act of the latter (*Howe v. Northern Pacific Ry. Co.,*
30 Wash. 569, followed).

RAILROADS — INJURY TO EMPLOYEE — CONTRIBUTORY NEGLIGENCE.

In an action by a railway employee against the company to
recover for injuries recovered by being struck by a fast passenger
train while riding upon a hand-car a nonsuit was proper, when it
appeared that the accident happened near a small station at which
this train did not stop, but was accustomed to go by at full speed;
that the plaintiff had worked for the company at that point for
four years and knew the train was due and would pass at full
speed; and that prior to the accident he was not looking and
listening for it, and failed to notice the headlight until he was
struck; there being no positive evidence that the whistle and
bell were not sounded as was customary, but merely that the wit-
nesses did not hear them.

Appeal from Superior Court, Spokane County.—Hon.
WILLIAM R. BELL, Judge.   Affirmed.

*Robertson, Miller & Rosenhaupt,* for appellant:

It is not negligence for a servant engaged as was the
appellant to rely upon the customary signals being given.
*Hooper v. Great Northern Ry. Co.,* 83 N. W. 440.   The
question of contributory negligence should be submitted
to the jury.  *Townley v. Chicago, M. & St. P. Ry. Co.,* 11
N. W. 55; *Burian v. Seattle Electric Co.,* 26 Wash. 606;
*Nelson v. S. Willey S. & N. Co.,* 26 Wash. 548.   It is
only where the evidence is practically undisputed and the
inferences deducible therefrom point to the conclusion that
the plaintiff was at fault, and to that conclusion alone,

that the court is justified in determining the question as a matter of law. *Dunlap v. Railroad Co.,* 130 U. S. 649 (32 L. ed. 1058); *Kane v. Railroad Co.,* 128 U. S. 91 (32 L. ed. 339); *Sioux City & P. R. R. Co. v. Stout,* 17 Wall. 657 (21 L. ed. 745); *Louisville & N. R. R. Co. v. Woodson,* 134 U. S. 614 (33 L. ed. 1032). It was a rule of the company, as well as their established practice and custom, when within the station limits to blow a whistle or ring a bell, and upon this reliance was placed by every person who used the track. *Howard v. Delaware & H. Canal Co.,* 40 Fed. 195; *Erickson v. St. Paul & D. Ry. Co.,* 5 L. R. A. 787; *Shannon v. Consolidated Tiger, etc., Mining Co.,* 24 Wash. 119.

*Stephens & Bunn* and *W. F. Townsend,* for respondents:

With the knowledge which plaintiff had concerning the approach of this train at that time and place, and his failure to keep out of its way, the question of fact whether the whistle was blown or the bell rung is utterly immaterial, so far as his right to recover is concerned. *McDonald v. International & G. N. Ry. Co.,* 22 S. W. 939. If the weather and other circumstances were such as to make it difficult to see or hear that train, then he should have taken other means to avoid being struck by it, and his negligence in not doing so is sufficient to defeat recovery. *Heffinger v. Minneapolis, etc., Ry. Co.,* 45 N. W. 1131.

PER CURIAM.—On the evening of December 6, 1898, appellant, who was an employee of the Northern Pacific Railway Company, and two fellow workmen, left Scott station, on the line of said railroad, on a handcar, and went west about five miles to do repair work on a bridge of said railroad. They left the bridge to return to Scott

station about three o'clock in the morning of December 7, 1898, and proceeded with the hand-car on the line of said railroad to said station, where they arrived about four o'clock a. m. on said date. In order to reach the hand-car house, where said car was kept when not in use, they passed Scott station, which is situate a short distance west of said car house. While proceeding between the station and the car house, a passenger train of the respondent railway company, running at great speed, came up behind the hand-car and struck it throwing appellant in such a manner that he sustained serious injuries. It was not the custom for this train to stop at that station, and it was the rule for it to pass at full speed, which fact was known to appellant and his companions. It is alleged, however, that it was the custom to blow the whistle and ring the bell upon all trains when passing said station, and that this was not done upon the train in question. Negligence is predicated upon the alleged failure to give these signals of approach, and damages in the sum of $15,000 are demanded. Contributory negligence is alleged by respondents. A jury was impaneled to try the cause, and at the conclusion of appellant's testimony the respondents challenged the sufficiency of the evidence, and moved the court to discharge the jury and render judgment in favor of respondents. The motion was granted and judgment entered accordingly. From said judgment this appeal was taken.

We will first refer to the contention of respondents that the cause should have been determined upon the demurrer to the complaint. This contention is based upon the following ground: Appellant in his complaint joined as co-defendants the railway company and the respondent Matheson, who was the employee of the company as locomotive

engineer in charge of the engine which was drawing the
train when the accident occurred.   It is contended that
there can be no joint liability of the parties defendant in
the complaint, for the reason that, if the railway com-
pany is liable at all, it must be not because of any act
of its own, either by way of commission or omission, but
by reason of the act of its servant, and by virtue of the
doctrine of *respondeat superior*.   It is also insisted that,
if the servant is liable, his liability must be direct, because
of his own personal neglect in failing to ring the bell or
sound the whistle.   Respondents rely largely upon the case
of *Doremus v. Root,* 23 Wash. 710 (63 Pac. 572, 54
L. R. A. 649), but, since the briefs in the case at bar were
prepared, this court has passed directly upon the question
presented here, and against respondents' contention, in
*Howe v. Northern Pacific Ry. Co.,* 30 Wash. 569 (70 Pac.
1100).   In that case the court said:

"But without entering into a discussion or an analysis
of these conflicting opinions, considering the fact that uni-
versal authority will hold responsible in independent act-
ions both the master and the agent or servant whose
tortious act is the cause of the injury, and the holding of
this court that as to the liability of the servant or agent
there is no distinction between cases of misfeasance and
those of nonfeasance, and in further consideration of the
reformed procedure which obtains in this state, we are in-
clined to hold with those cases which permit the rights
of all parties to be determined in one action, thereby dis-
countenancing and rendering unnecessary a multiplicity
of suits, rather than to compel the plaintiff to pursue and
exhaust his remedy against one actor, and then, if com-
pensation cannot be realized for the damage sustained,
to proceed against another.   We think this view is more
in harmony with the spirit of our Code and modern pro-
cedure generally."

We think the opinion in the last named case, in its

3-32 WASH.

analysis of *Doremus v. Root, supra,* shows clearly that the two decisions are not in conflict. The demurrer was therefore properly overruled.

The errors assigned by appellant, severally stated, all involve the one contention that the court erred in granting the challenge to the evidence, and in withdrawing the cause from the consideration of the jury. The evidence shows that, during the return trip from the bridge above mentioned to Scott station, the appellant rode much of the distance upon the hand-car, while his companions walked and pushed the car. The night was cold; there was snow upon the ground and upon the tracks, and they found it difficult, if not impossible, to propel the car by merely working the handles ordinarily used for that purpose. Appellant, being the oldest of the party, was requested to ride upon the car and keep the handles moving to prevent freezing, while those walking really propelled the car by pushing. In this manner they approached and were passing through the limits of Scott station when the accident happened. Appellant and the entire party knew that it was the time for the passenger train to pass. Appellant says he looked and listened for the train many times while they were making the trip from the bridge, and so continued to do until within a substantial distance of the place of the accident, when he ceased to look and listen. He says plainly that he did not look and listen after passing a certain curve. A question asked him suggests that the distance was 2,000 feet. The answer does not deny that the distance may have been as much as suggested, but simply designates its beginning point as being at the curve mentioned. There was no positive testimony that the whistle and bell were not sounded, but appellant and one other witness say they did not hear them, and

give it as their opinion that, if the warning sounds had been given, they could have heard them. Appellant had worked for the respondent railway company about fourteen years, and had lived at Scott station and worked upon the railway line in that vicinity about four years. He knew the environment well, and knew that the fast passenger train, which always passed this station at a high rate of speed, was liable to come at any moment. Having been for so long a time an employee of the railway company, and, as such, being particularly informed about the time and speed of the train at that point, he was better prepared to protect himself than an ordinary passing traveler would have been. With all his knowledge of the surroundings, he did not look and listen for some time before the accident. He was not required to furnish any propelling power for the hand-car, but stood in an elevated position, where he could easily look out for the train. He was asked the following question: "And you did not see the head light until you were struck?" to which he replied: "I saw no light until after I was struck." It would seem that there can be no doubt about appellant's ability to have seen the strong headlight of the engine in time to have left the hand-car if he had been on the look out for it. As before stated, there is no positive testimony that the whistle and bell were not sounded, but the witnesses simply say they did not hear them. The night was cold, and the wind was blowing. There may have been room for difference of opinion as to whether the sounds might have been heard above the noise of the wind. But we do not see how there can be any difference of opinion upon the other point. It therefore follows that appellant's neglect so contributed to his injury that he is not entitled to recover. The passenger train had the full

right of way at that time, and it was the duty of every employee of the company to exercise care and keep out of the way of the train. We do not see how the minds of reasonable men can differ upon the question of appellant's negligence. It seems apparent to any reasonable mind that he did not exercise the prudence and caution which were required of him under the circumstances. In *Cooney v. Great Northern Ry. Co.,* 9 Wash. 292 (37 Pac. 438), a case somewhat similar to the one at bar, it was held that, even if it were conceded that the railway company was negligent, yet the want of care on the part of the respondent in the case precluded his recovery. The court said, at page 296:

"If the respondent had been in the exercise of that degree of prudence and caution which it was his duty to use under the circumstances, it is hardly possible to believe that he would have been injured."

The judgment in that case was reversed and a nonsuit ordered.

We believe the trial court in the case at bar did not err in granting the challenge to the evidence, and in withdrawing the case from the jury. The judgment is therefore affirmed.