[No. 10449. Department Two. February 24, 1913.]

EDMOND GENNAUX, *Respondent*, v. NORTHWESTERN IMPROVEMENT COMPANY et al., *Appellants*.[1]

MASTER AND SERVANT — INJURY TO SERVANT — FALL OF OVERHEAD ROCK IN COAL MINE—CAUSE OF ACCIDENT — EVIDENCE — SUFFICIENCY. The negligence of the master in failing to provide a safe working place in a coal mine is for the jury, where it appears that a miner was injured by the fall of a great quantity of overhead rock, all of which could not have come from his own roof, but it could have come from, and there was evidence of a fall of rock in, an adjacent chute, which was admitted to be in bad condition.

SAME—SAFE PLACE TO WORK—COAL MINE—DUTY OF INSPECTION. Where coal miners were expected to work up to the line of a chute, which they were not to enter or inspect, it is the continuing duty of the master to inspect and keep such adjacent space in a safe condition.

SAME—FELLOW SERVANTS—COAL MINES—EMPLOYEES IN ADJACENT WORKINGS. No question of the negligence of fellow servants is involved, where an employee was injured through failure to inspect and keep a working place safe.

SAME — SAFE PLACE — COAL MINE — ASSUMPTION OF RISKS — UNKNOW DANGERS. A coal miner does not assume the risks of dangers in adjacent works not under his control or subject to his inspection, and of which he had no knowledge, and which were not due to changing conditions, but to a "squeeze" known to the fire boss and the foreman, neither of whom gave any notice or warning thereof.

SAME—CONTRIBUTORY NEGLIGENCE. Evidence that the roof over a miner's room fell, does not establish his contributory negligence in placing props, as a matter of law, where the cause of the fall was a question for the jury.

SAME—JOINT TORT FEASORS—MASTER AND MINE FOREMAN. A foreman, having direct supervision of a mine, who knew of dangerous

[1]Reported in 130 Pac. 495.

conditions and took no step to remedy them, is guilty of negligence as a joint tort feasor with the company, and both may be joined in one action.

SAME—MASTER AND GENERAL SUPERINTENDENT—DUTY AND NOTICE. A general superintendent of a mine having no duty of personal inspection of the underground workings and no actual knowledge of a dangerous condition, known only to the fire boss and mine foreman who did not report it, is not liable with the company as a joint tort feasor.

DAMAGES—PERSONAL INJURIES—TOTAL DISABILITY—EXCESSIVE VERDICT. A verdict for $18,000 for personal injuries sustained by a strong, well, coal miner, 29 years of age, capable of earning $4 per day, is not excessive, where he was rendered a cripple for life, with practically no earning power, his left leg was atrophied and partly paralyzed, he had little control of his urinary organs and suffers constant pain, with no hope of recovery.

Appeal from a judgment of the superior court for King county, Gay, J., entered February 25, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a coal miner. Affirmed in part, and reversed in part.

*C. H. Winders,* for appellants.

*Vanderveer & Cummings,* for respondent.

ELLIS, J—This is an appeal from a judgment entered upon a verdict against the appellants jointly, in favor of respondent, for $18,000 damages, for personal injuries sustained by the respondent while employed by the appellant Northwestern Improvement Company as a miner in one of its coal mines at Ravensdale, Washington. The appellants Lawrence and Edwards were respectively mine foreman and general mine superintendent.

The careful and dispassionate manner in which the case was tried by counsel on both sides renders an inherently complicated situation comparatively easy of statement. In the mine in question, the coal lies in a vein about six feet thick, tilted in an upward pitch of about thirty degrees. The mine is entered by a slope sunk on the vein, from which, at the

various levels, counters and gangways are run at right an-
gles. From these counters and gangways, chutes about ten
feet wide are drifted upward, dividing the vein at intervals
of thirty to fifty feet. These chutes are connected at intervals
of about fifty feet by passages for ventilation, called cross-
cuts. The miners worked in pairs, each pair digging a chute
and the adjacent half of the cross-cuts to the chutes on either
side. The coal in the vein is thus blocked into irregular seg-
ments called pillars, extending from the gangway upward to
the end of the vein or working. These pillars contain about
seventy-five per cent of the coal in the vein, and the work so
far is largely preliminary to the mining of the coal so blocked.
Sheet-iron troughs or chutes are laid in the chute to expedite
the running of the coal down the incline to the gangway,
where it is taken from the mine in cars.

In mining the pillars, the work progresses from the upper
end of the chutes toward the gangway. Beginning on the
right hand side of the chute which they have driven, the
miners take successive slices off the upper corner of the last
pillar but one, so that the coal in the pillar above will have
better access to the chute. When the top pillar has been
mined, the miners drop down to the third pillar from the top,
again take off the upper corner to facilitate the mining of the
second pillar, repeating this process till the gangway is
reached, when that section of the vein is completed.

As the work progresses, both in chutes and pillars, props
are set as may be necessary to sustain the roof, the company
furnishing the timbers and the miners setting them. By the
system pursued in this mine, each pair of miners was held
responsible for the safety of the immediate place of work to
the extent of looking to the condition of their own roof, tim-
bering, and supporting it. These miners, however, had noth-
ing to do with the adjacent workings, the evidence clearly
showing that they were not even allowed to enter and inspect
them without special direction from the management, ex-
cept possibly in removing from the pillar the last slice of

coal next the adjacent chute. This coal, however, was always removed from the other side.

All of the work was done under the supervision of the mine foreman. There was also a fire boss, whose duty it was to go through the mine every morning before work commenced and inspect for gas, bad roof, and other dangers to the men. It was his duty to post on a bulletin board at the entrance to the mine, so that the miners might see it as they entered, notice of any dangers found on such inspection. He also testified that, in entering the mine, the men would pass him and he customarily warned them personally of any dangers found from caving or bad roofs. The following is a reduced reproduction of a plat in evidence, showing the relative location of chutes, cross-cuts, and pillars in that portion of the mine where the accident occurred.

Chute 27 was driven by the respondent and his partner, as were also the cross-cuts on either side, one-half the distance to the next chute. The adjacent chutes and other half of the cross-cuts were driven by other pairs of miners working independently of respondent and his partner. The men in chute 26 had mined the coal from the eighth or upper-

most pillar to the right of that chute, and were then working a short distance below. The respondent and his working mate had sliced off diagonally a large part of the seventh pillar at the right of chute 27, and had mined nearly all of the eighth pillar, leaving a stump of coal on the margin of chute 26 and above cross-cut eight, about four or five feet thick at the lower end, gradually widening to ten or twelve feet in thickness at the upper end. Immediately above cross-cut eight, they had removed the coal from this stump through to chute 26, to a distance of about four feet above the cross-cut. The shaded portion of the plat indicates the unmined coal in the seventh and eighth pillars.

At the time of the accident, the respondent's partner was setting a drill post at a point on the left side of the stump of coal, about ten feet up from the lower end, at the place indicated by a single dot. The respondent was between two posts or props at the foot of the stump, as indicated by the other two dots. He was facing the coal in a bent posture, clearing the floor to place sheet-iron upon which to run the coal to chute 27. He testified that, while so engaged, he heard a sound as of something falling to his right and apparently in chute 26 above the cross-cut, and immediately thereafter was knocked senseless. His partner testified that he heard a sound as of something falling in chute 26 on the opposite side of the stump of coal from where he was working, causing a jar so violent as to shake the body of coal and cause pieces to fall therefrom on his side; that he at once went to the respondent, and found him almost covered by rocks and debris with a large rock on his legs, which he rolled off; that one of the props was down and there was a hole in the roof immediately above respondent, about a foot or eighteen inches deep, and three, four, or possibly five feet square, from which some of the roof had fallen; that while he was extricating the respondent, some rocks rolled down from above in chute 26 and onto respondent's place of work. After the accident there were about two carloads, or over

four tons, of rocks and debris lying in chute 26 opposite the eighth cross-cut and extending over into the cross-cut and onto respondent's place of work. There was no evidence of a fall of roof in chute 26 over this pile. The undisputed evidence shows that all of this rock could not have come from the respondent's own roof, as the hole there was not large enough to have furnished it. The prop which was down had stood within less than three feet of the line of chute 26, and it is respondent's contention that it was knocked down by stones rolling from a fall of roof a short distance up 26 down the incline, and deflected by posts or other rocks into the respondent's workings. The mine was in absolute darkness but for the oil lamps worn upon the miners' caps, which the evidence shows, throw a light but for a distance of six or seven feet.

The negligence charged in the complaint is that rocks fell from the roof of chute 26 above cross-cut eight as a result of the careless and negligent condition in which it was left, and rolled with the pitch across the respondent's workings, injuring him; that the place was under the supervision and control of the appellants Lawrence and Edwards, who knew of the danger but failed to warn the respondent of it. The answer denied the allegation of negligence, and set up, as affirmative defenses, assumption of risk, contributory negligence, and negligence of fellow servants. At appropriate stages of the trial, motions were made for nonsuit as to each of the defendants, for judgment notwithstanding the verdict as to each defendant, and for a new trial as to each. The overruling of these motions are assigned as errors.

It is first contended that there was no proof of negligence. It is, of course, conceded that the respondent was injured by a fall of rock; but the appellants contend that there was no evidence that it came from chute 26. Stress is laid upon the respondent's testimony that it all happened in the "clap of a hand," and that of his partner that it happened in the "flash of an eye." They did assent to questions so worded on

cross-examination, but this was manifest hyperbole. The men were foreigners, expressing themselves with some difficulty, and from their whole testimony it is plain they merely meant that the catastrophe covered but a short interval of time. The respondent testified that he heard the noise in chute 26 and thought the rock came from there. This, together with the undisputed fact that upon and near the respondent's place of work immediately after the accident were some four tons of rocks which no one testified were there before, and his partner's testimony that there was a sound and jar of a fall in chute 26 sufficient to shake the stump of coal from 6 to 10 feet thick, was certainly persuasive evidence that rocks coming from a fall in 26 rolled upon the respondent's place of work, knocked out the prop, and caused whatever fall there was from his own roof. The evidence is conclusive that rocks had before been falling in the upper end of 26, that a "squeeze" or settling of the roof there had already set in, and that the fire boss and Lawrence, the mine foreman, knew of this condition. Their knowledge was notice to the company.

It is urged that where the rocks causing the injury came from was a matter of mere conjecture. It was no more conjectural than any other fact depending upon circumstantial evidence. They could have come but from one of two places, either from chute 26 or from respondent's own roof; and the positive evidence as to the sound of a fall in 26 immediately prior to the accident, and of large masses of rock upon and near respondent's place which could only have come from 26, and that other rocks rolled down from 26 onto respondent's place of work while his partner was removing him, was evidence which, considering the admitted bad condition of chute 26 above cross-cut eight, was sufficient to take the case to the jury upon this question.

It was admitted that respondent and his partner were expected to work right up to the line of chute 26, which chute they were not supposed to enter or inspect. It was therefore

the appellant's duty to inspect, and keep that adjacent space in such condition as not to cause injury to these men. *Mc-Kenzie v. North Coast Colliery Co.*, 55 Wash. 495, 104 Pac. 801, 28 L. R. A. (N. S.) 1244. This duty was not at an end when the miners in 26 had finished there. The duty continued so long as an unsafe condition in 26 would be an unnecessary menace to men in adjacent workings. The duty to inspect and keep safe or to warn these men of the danger that they might take steps to protect themselves was a continuing duty of the master. No warning of any kind was given. The question of fellow servant is not involved. *Shannon v. Consolidated Tiger & Poorman Min. Co.*, 24 Wash. 119, 64 Pac. 169; *McKenzie v. North Coast Colliery Co.*, supra; *Uren v. Golden Tunnel Min. Co.*, 24 Wash. 261, 64 Pac. 174; *McMillan v. North Star Min. Co.*, 32 Wash. 579, 73 Pac. 685, 98 Am. St. 908; *Costa v. Pacific Coast Co.*, 26 Wash. 138, 66 Pac. 398.

The fire boss had inspected the mine on the morning in question, knew of the dangerous condition of chute 26, but neither warned these men, who were working right up to its margin, nor posted any notice of danger upon the bulletin board. Lawrence, the pit boss or mine foreman, had gone through the mine, knew of the dangerous condition of chute 26, knew that a squeeze had there set in, but neither warned these men nor took any step to remedy the conditions. The evidence was uncontradicted that it was his duty to supervise the workings and to see that the methods employed by the men were safe. The respondent testified that no one ever warned him of this danger, and there is no evidence that any one ever did warn him or that he knew of it. He did not assume the risk of dangers in his place of work resulting from the condition of adjacent workings, not under his control nor subject to his inspection. This case falls directly within the rule announced in *McKenzie v. North Coast Colliery Co.*, supra. Appellants cite many cases holding that where, in the operation of the work, conditions are constantly

changing and the employee knows it, he accepts such risks as are ordinarily incident to such operations. *Cully v. Northern Pac. R. Co.*, 35 Wash. 241, 77 Pac. 202. That rule has no application here. The changed conditions in chute 26 were not due to work then in progress. It was due to a squeeze of which the appellant had knowledge, but of which the respondent had neither knowledge nor warning.

The respondent was not guilty of contributory negligence unless the injury was caused by the insecure placing of the prop to his own roof which fell, and of this there was no evidence except that it fell. What caused it to fall was, as we have seen, under the evidence a question for the jury. Contributory negligence as a matter of law was not established.

The evidence which we have discussed makes it plain that the apellant Lawrence was guilty of personal negligence. He had the direct supervision of this mine. He knew of the dangerous conditions, took no steps to remedy them, and failed to warn the respondent of their existence. His negligence was that of the company. He and the company were liable as joint tort feasors, and may be joined as defendants in the same action. Shearman & Redfield, Negligence (5th ed.), § 122; *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *McHugh v. Northern Pac. R. Co.*, 32 Wash. 30, 72 Pac. 450; *Morrison v. Northern Pac. R. Co.*, 34 Wash. 70, 74 Pac. 1064.

As to the appellant Edwards, the evidence presents a different aspect. He was general superintendent, not alone of this mine but of all of the company's mines in that locality. While he had a general supervision, there was no evidence showing a duty of personal inspection of the underground workings on his part. There was no evidence that he had actual knowledge of the condition of chute 26, or that either the fire boss or mine foreman had reported these conditions to him. As to him the action should have been dismissed.

Several assignments of error were based upon the court's

instructions. We have read these instructions with care and find that, as a whole, they correctly presented the law as applied to the evidence. We find no prejudicial error in the instructions.

Finally, it is contended that the verdict was excessive. At the time of the injury, the respondent was a strong, well man, twenty-nine years old. He is now by reason of the accident a cripple for life. He was capable of earning as a coal miner an average of $4 a day. He can now earn practically nothing. His left leg is atrophied and almost completely paralyzed. He has little control of his urinary organs and suffers constant pain. There is little hope of relief from any of these conditions so long as he lives. While the verdict seems large, we cannot say, in view of the repondent's helpless and hopeless condition, that it is unreasonable. *McKenzie v. North Coast Colliery Co., supra; Murphy v. Pacific Tel. & Tel. Co.*, 68 Wash. 643, 124 Pac. 114.

The judgment is affirmed as to the appellants Northwestern Improvement Company and William Lawrence. It is reversed with directions to dismiss as to the appellant Edwards, who is entitled to his costs.

MOUNT, MAIN, MORRIS, and FULLERTON, JJ., concur.