[No. 4369.  Decided December 30, 1902.]

ELZIE N. HOWE, *Respondent,* v. NORTHERN PACIFIC
RAILWAY COMPANY, *Appellant.*

REMOVAL OF CAUSE — SEASONABLENESS OF APPLICATION.

Where the resident defendants to an action are dismissed from the case, only at the close of the introduction of testimony and in opposition to plaintiff's contention, an application at that time by the remaining non-resident defendant for removal of the cause to the federal court is not seasonably made.

MASTER AND SERVANT — TORTS OF SERVANT — JOINT LIABILITY.

An action for tortious negligence may be maintained against the master and his employee jointly, where the injury was caused by the act of the latter (*Doremus v. Root,* 23 Wash. 710, distinguished).

SAME — FELLOW SERVANTS — FIREMEN AND CONDUCTORS.

The fireman and conductor on a train are not fellow servants, but the conductor stands as a vice-principal, for whose negligence

the railway company is liable, where injury results therefrom to the fireman.

SAME — CONCURRING NEGLIGENCE.

Where the negligence of the master contributes to the injury of a servant, the master is liable, though the negligence of a fellow servant may be contributory.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Affirmed.

*Stephens & Bunn,* for appellant.

*Barnes & Latimer* and *Hyde, Townsend & Tompkins,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is a personal injury case. On the 2d of January, 1899, the respondent was fireman on train No. 13, a mixed passenger and freight train running from Cheney to Coulee City. On this day a snowplow train had been sent ahead of the passenger train to clear the road and prepare the track for the passenger train, and at a point about six miles west of Almira, a station between Cheney and Coulee City, No. 13, upon which respondent was firing the lead engine, ran into the snowplow, and respondent was injured by the collision to such an extent that his leg had to be amputated. Suit for $25,000 damages on account of his injuries was brought by the respondent against the Northern Pacific Railway Company, which was operating the trains above spoken of. Respondent joined as defendants with the railway company Frederick W. Gilbert, who was at the time the superintendent of the division of the railroad upon which plaintiff was working, and A. G. Kamm, who was the chief dispatcher employed by the railroad of the division before mentioned. The trial of the cause resulted in a verdict for respondent

for $15,000, against the railway company alone, Kamm
and Gilbert having been dismissed from the case by the
court at the end of all the testimony. Judgment was en-
tered upon the verdict, and from such judgment this appeal
was taken.

The statement of the case by the appellant is very ex-
pansive and minute in detail, but we think we have stated
sufficient to settle the propositions necessary for the de-
termination of the cause.    The complaint alleged negli-
gence in the company in failure to promulgate and enforce
ample and sufficient rules for the running of the trains;
failure to provide proper machinery and appliances; in
running defective locomotives and engines; that the same
were unskillfully equipped, manned, and fitted out; fail-
ure to furnish competent servants; an insufficient number
of servants; negligently ordering train No. 13 to proceed
westerly from Almira station to Coulee City on the night
in question; and various other allegations of negligence,
and failure on the part of Gilbert and Kamm to prepare,
publish, and enforce all necessary rules, regulations, and
orders for the running and operation of their trains.    A
joint demurrer of the defendants was interposed to the
complaint on the ground of misjoinder, which was over-
ruled, and on this ruling is based one of the assignments
of error.

It is contended by the appellant that there is no joint
liability between the railway company and the dispatcher
and the division superintendent; that the master cannot
be liable together with any of its employees joined in an
action based upon charges of this character; and it is in-
sisted that this court has decided this question in favor
of appellant's contention in *Doremus v. Root,* 23 Wash.
710 (63 Pac. 572, 54 L. R. A. 649).    But we do not

so understand the decision in that case.    There the action, brought against the railroad company and Root, was based exclusively upon the alleged negligence of Root while acting as conductor of one of the railroad company's freight trains, the respondent in that case being fireman and Root conductor on the same train.    The jury returned a verdict finding for the plaintiff and against the defendant railroad company, and assessed the damages of the plaintiff at $15,000.    After the verdict was read, and before the jury was discharged, the attorney for defendant Root inquired of the court what construction the court would place upon the verdict with respect to defendant Root, and the court ruled that said verdict was, and should be considered as, a verdict in favor of defendant Root.    The verdict was then recorded and the jury discharged.    Afterwards a judgment was entered in favor of Root and against the plaintiff for costs, and judgment was finally entered against the railroad company for the amount of the verdict, with costs to the respondent.    This court held in that case that, inasmuch as the negligence of the railroad company was alleged to be the negligent action of the servant, and the jury having affirmatively found that the servant was not negligent, it must follow that there was no negligence on the part of the master, the railroad company; and that, as there had been no appeal from the judgment in favor of the servant, the cause could not be retried, and it was, therefore, ordered dismissed.    In so far as the decision in this case and the discussion leading up to it are concerned, the particular question involved here was not involved in that case, nor attempted to be decided. If, however, any inference is to be drawn from the decision in that case, it is opposed to appellant's contention, for at the threshold of the case the question of non-joinder was

raised and vigorously discussed in appellant's brief, and, if the court had concluded that the appellant's contention was right on that jurisdictional question, it would not have been necessary to have examined or decided the subsequent point upon which the court's decision was based. On this question, however, there is a square conflict of authority, and we have examined it with reference not only to the cases which are cited in appellant's brief, but with reference to the cases cited in the brief of the appellants in the case of *Doremus v. Root, supra.*

Section 242 of Shearman & Redfield on the Law of Negligence (5th ed.), is cited to support the contention that the master and servant cannot be joined. This and the succeeding section are in reality a discussion of the principle involved in the distinction that has been raised by some courts between the liability of an agent in case of nonfeasance and that of one in case of misfeasance; but in § 248 the rule is thus stated under the title, "Joint Liability of Master and Servant":

"Wherever a master can be held responsible for the tortious negligence of his servant, the two are generally held jointly as well as severally liable; and if a servant employs a sub-agent, under such circumstances that both the original master and the intermediate employer are liable for the negligence of the sub-agent, they are all jointly and severally liable;"

citing several cases but stating that a different rule prevails in Massachusetts, and probably in Maine. The theory of the cases holding that there can not be a joint liability is that there is really but one act of negligence; that the negligence can be imputed to the master, not by reason of his being a joint tortfeasor, but by reason of his peculiar relation to his agent; and that public policy holds him responsible for the agent's acts under the doc-

trine of *respondeat superior;* and it seems that theoretically there may be something in this idea.    Many of the cases, however, base their opinions upon the old distinction which we have spoken of between a case of misfeasance and one of nonfeasance, a distinction which this court, in *Lough v. Davis & Co., ante,* p. 204 (70 Pac. 491), held not to be sound, either on reason or on authority.    Without specially reviewing the cases on this subject, which are collated in *Warax v. Cincinnati, etc., Ry. Co.,* 72 Fed. 637, in which the right to join the master and servant is denied, there are cited, as sustaining the affirmative of the proposition:    *Wright v. Wilcox,* 19 Wend. 343 (32 Am. Dec. 507); *Suydam v. Moore,* 8 Barb. 358; *Montfort v. Hughes,* 3 E. D. Smith, 591; *Phelps v. Wait,* 30 N. Y. 78; *Wright v. Compton,* 53 Ind. 337; *Greenberg v. Whitcomb Lumber Co.,* 90 Wis. 225 (63 N. W. 93, 28 L. R. A. 439, 48 Am. St. Rep. 911); *Newman v. Fowler,* 37 N. J. Law, 89.

In support of the view that the master can not be joined as defendant in an action against his servant for negligence, where the master is not personally concerned in the negligence either by his presence or express direction, the following are cited:    *Parsons v. Winchell,* 5 Cush. 592 (52 Am. Dec. 745); *Mulchey v. Methodist Religious Society,* 125 Mass. 487; *Clark v. Fry,* 8 Ohio St. 358 (72 Am. Dec. 590); *Seelen v. Ryan,* 2 Cin. R. 158; *Campbell v. Portland Sugar Co.,* 62 Me. 553 (16 Am. Rep. 503); *Beuttell v. Chicago, M. & St. P. Ry. Co.,* 26 Fed. 50; *Page v. Parker,* 40 N. H. 47; *Bailey v. Bussing,* 37 Conn. 349.    Other cases have been decided since with equally conflicting results.

But without entering into a discussion or an analysis of these conflicting opinions, considering the fact that uni-

versal authority will hold responsible in independent actions both the master and the agent or servant whose tortious act is the cause of the injury, and the holding of this court that as to the liability of the servant or agent there is no distinction between cases of misfeasance and those of nonfeasance, and in further consideration of the reformed procedure which obtains in this state, we are inclined to hold with those écases which permit the rights of all parties to be determined in one action, thereby discountenancing and rendering unnecessary a multiplicity of suits, rather than to compel the plaintiff to pursue and exhaust his remedy against one actor, and then, if compensation can not be realized for the damage sustained, to proceed against another. We think this view is more in harmony with the spirit of our Code and modern procedure generally. It is therefore held that no error was committed by the court in overruling the defendant's demurrer to the complaint.

The next pertinent claim is that the cause should have been removed to the federal court upon the application which was made and the bond which was offered when Kamm and Gilbert were dismissed from the case. We do not think this contention can be sustained. It is true, under the authorities, if the application is made seasonably, it should be granted, even though it was not made at the commencement of the trial, as was decided in *Powers v. Chesapeake & O. Ry. Co.,* 169 U. S. 92 (18 Sup. Ct. 264), cited by appellant. In that case, however, the plaintiff discontinued as to the resident defendants when the cause was called for trial; but in the case at bar it was the request of the defendants themselves that brought about their dismissal, in opposition to respondent's contention. This question is distinctly settled in *Whitcomb v. Smithson,*

175 U. S. 635 (20 Sup. Ct. 248), a late case, decided in January, 1900, and one which seems to us to be exactly in point.   In answer to the proposition urged here, the court in that case said:

"This might have been so if when the cause was called for trial in the state court plaintiff had discontinued his action against the railway company, and thereby elected to prosecute it against the receivers solely, instead of prosecuting it on the joint cause of action set up in the complaint against all the defendants;"

citing *Powers v. Chesapeake, etc., Ry. Co., supra.*

"But," said the court, "that is not this case.   The joint liability was insisted on here to the close of the trial, and the non-liability of the railway company was ruled *in invitum.*  .  .  .   The case was prosecuted by plaintiff accordingly, and at the close of the evidence a motion was made to instruct the jury to return a verdict in behalf of the railway company because the evidence did not sustain the allegations of the complaint as to the negligence of that defendant, and the court granted the motion on that ground in view of the rules of the company, which it found 'to amply cover all the contingencies arising in the prosecution of the various duties incident to railroad service at the point.'   This was a ruling on the merits, and not a ruling on the question of jurisdiction.   It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable and thereby to enable the other defendants to prevent plaintiff from taking a verdict against them.   The right to remove was not contingent on the aspect the case may have assumed on the facts developed on the merits of the issues tried."

We think this case is decisive of the question raised, and that no error was committed by the court in refusing to transfer the case to the federal court.

We have examined the record in detail, and, although

it is voluminous, we have been unable to discover any reversible error, either in the admission or rejection of testimony, or in the giving or refusing to give instructions. But even if slight error had crept into some of the proceedings in relation to the proof of negligence, we think, under the theory of the appellant, that it would not have been prejudicial, and that the court would have been justified in instructing the jury that negligence had been proven.  It is settled law that a rear-end or head-end collision is *prima facie* the result of negligence, where the rights of passengers and of railroad companies are in controversy.  If any different rule obtains in a litigation between the railroad company and an employee who is injured, it must be upon the theory that the employee is in some way responsible for the negligence, either through contribution on his part or contribution by a fellow servant.  It is conceded and asserted in this case that the conductors on both the trains, viz., the passenger train No. 13 and the snowplow train, were guilty of negligence, and that the accident would not have happened had it not been for such negligence. After discussing the rules which provide the duty incumbent upon the conductor to use certain precautions in cases of this kind, and referring to the fact that train No. 13 left Almira only ten minutes after the snowplow train, and the assertion that the officers are charged by the rules with the duty of assuming that another train is coming when their train is delayed; that explosive caps or torpedoes are provided for placing upon the tops of the rails as signals to be used in addition to the regular signals; and many other precautionary provisions, the appellant says:

"It is shown by the record that trains very often lose time or actually have to stop between stations.   This has

37-30 WASH.

been true ever since railroad trains commenced running, and because of this all trains were equipped, as this snow-plow train was equipped, with appliances to protect them ahead and in the rear.    These appliances are so effective and so easily used that there is no occasion and no reason for a rear-end collision of this sort, except in the instance where the train crews are wholly negligent and careless in the use of the signals, or in the entire failure to use them. It will be noted that there was no careless or negligent use of the signal appliances which were on this snowplow train. They had the appliances, they had torpedoes, they had fuses, and they had lanterns; but, instead of there being a negligent or careless use of them, they did not use them at all.    Any one of these signals would have avoided a col-lision or accident of this sort.    A torpedo placed on the track, even though there be but one, is a signal for any fol-lowing train to stop until it has burned out.    .    .    . There was a conductor on the train, who could have done these things.    There was a rear brakeman on the train, who could have done these things; and every single one of these men knew and must have known that train was losing time from the moment that it left Almira; and every one of these men knew and must have known that a fast run-ning passenger train was behind them running in the same direction.    It is almost inconceivable under such circum-stances, and almost impossible to believe, that these ap-pliances for their protection were not used; but they were not, and thus the injury was caused."

Like negligence is attributed by the appellant to the managers of both the snowplow train and the passenger train.    This charge must be made upon the theory that the fireman was a fellow servant with the conductor of the train, and that, therefore, the negligence of the conductor was the negligence of the fireman.    We cannot conceive that it is the duty of the fireman to assume or know that the conductor has not done his duty,—a duty so plain and palpable as is charged upon him by the appellant in this

case; or that he is to leave his box and establish a surveillance over the conductor and other operators of the train. Such conduct on his part would not only be unbecoming or intolerable, but, if tolerated, might lead to the gravest results.     There must be some one in control of trains of cars while in transit.     There must be some directing mind, some particular person in whom responsibility is lodged; and it would lead to most disastrous confusion if the practice obtained to confer responsibility and directing power equally and miscellaneously upon conductors, brakemen, engineers, firemen, and other operators of a railroad.     The proof of such a practice would be the strongest proof of negligence.     But it may be confidently asserted that no such practice prevails.     It is matter of common knowledge that the conductor of a train under ordinary circumstances is the controlling power.     His official title indicates it; and the assumption of the master's authority by him, together with the actions of the company towards him, proves it.     As was pertinently said by the supreme court of the United States in *Chicago, etc., Ry. Co. v. Ross,* 112 U. S. 377 (5 Sup. Ct. 184):

"The conductor of a railway train, who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it, and control over the persons employed upon it, represents the company, and therefore that, for injuries resulting from his negligent acts, the company is responsible.     If such a conductor does not represent the company, then the train is operated without any representative of its owner."

But, whatever may be said of the doctrine of fellow servants in other jurisdictions, under the uniform holdings and announcements of this court the fireman on this train cannot be held to be a fellow servant of the conductors on

both or either of the trains which collided, and the negligence which led to this collision is proven upon both equally. The negligence of the company was so overwhelmingly proven in many instances in this case that, even if there had been negligence on the part of some one who might be construed to be a fellow servant of the respondent, the appellant would not thereby be relieved of its responsibility. *Northern Pacific R. R. Co. v. O'Brien,* 1 Wash. 599 (21 Pac. 32).

It is uniform authority that, if negligence of the master contributes to the injury, he is liable, even though the negligence of a fellow servant was contributory. *Grand Trunk Ry. Co. v. Cummings,* 106 U. S. 700 (1 Sup. Ct. 493). This principle has been uniformly followed by this court, and was again announced in *Ralph v. American Bridge Co., ante,* p. 500, where it is said:

"It is also well settled that if the negligence of a fellow servant concur with the negligence of the master, it does not excuse the primary negligence of the master for injury to another fellow servant."

An investigation of the whole case convinces us that no substantial error was committed in any respect. The judgment is therefore affirmed.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.

MOUNT, J., being disqualified, did not take part in this decision.