[No. 5889.   Decided January 5, 1906.]

CHARLES A. WILLIAMS, *Respondent*, v. BALLARD LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—INJURY TO EMPLOYEE CAUGHT IN COGWHEELS — CONTRIBUTORY NEGLIGENCE — WHEN QUESTION FOR JURY. A planer-man who is in a kneeling position with head and shoulders under a planer, a large and dangerous machine, is not guilty of contributory negligence, as a matter of law. in suddenly throwing his hand into unguarded cogs, known to him, in an effort to get from under the machine, in momentary forgetfulness of the danger, when a fellow servant starts the machine in motion without giving him any warning.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE. Contributory negligence is a question for the jury if men might properly differ as to whether the plaintiff had acted as a man of ordinary prudence would have done under the same circumstances.

SAME — PROXIMATE CAUSE — EXPOSED CONDITION OF COGWHEELS A CONTRIBUTING ELEMENT—LIABILITY OF MASTER. The maintenance of a planer with exposed cogs which could have been easily covered, and with defects whereby the cogs were likely to start automatically upon application of the idler, is the proximate cause of an injury to a planer-man who was injured thereby, while cleaning out under the machine, although the negligence of a fellow servant, who started the machine without giving any warning, contributed to the result; and such contributory cause does not relieve the defendant from liability.

SAME—ASSUMPTION OF RISKS—UNKNOWN DANGERS—DEFECTS IN MACHINE CAUSING UNEXPECTED STARTING—QUESTION FOR JURY. A planer-man who has worked upon a planer but five days and has no knowledge of a defect whereby the cogs may start automatically upon

[1] Reported in 83 Pac. 323.

the application of the idler, does not assume the risk from injury resulting from the known unguarded condition of the cogs, where there was ample time for him to have avoided the injury if the cogs had not automatically started.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 5, 1905, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action for personal injuries sustained by a planer-man caught in unguarded cogwheels. Affirmed.

*G. M. Emory,* for appellant.

*James McNeny* and *S. H. Steele,* for respondent.

Root, J.—Respondent recovered a judgment of $1,075 in the superior court for damages occasioned by having his hand crushed between the cogwheels on the side of a planer in the mill of appellant for whom he was working. The facts as admitted and revealed by the evidence were about as follows: The machine upon which the plaintiff was injured is known as a Hoyt planer, number 11, and consists of an iron frame or bed nearly fourteen feet long. The bed of the machine is three feet four inches wide, and two feet four inches above the ground; upon the bed of the machine are three sets of rollers, each set consisting of two steel cylinders, one placed above the other, the function of which is to carry the lumber through the machine and hold it in place against the planing knives; the first set of rolls are about five feet away from the front of the machine where the feeder stands. The distance between the first set of rolls and the second set of rolls is two and one-half feet; the distance between the second and the last set of rolls is about four feet. It is between the last named sets that the knives which plane the boards are situated. Each set of rolls is equipped with four cogs geared together in such a manner that they revolve, thereby causing the rolls to turn. These cogs are nine inches in diameter, and each pair of the left-hand cogs is so arranged as to afford an opening as much as six inches, so as to accommodate a piece

of lumber of that thickness; these are known as expansion gears.

The planer in question lay east and west in the mill, the operator standing in front of the machine at its east end. At the northwest corner of the planer were the cogs upon which the plaintiff was injured. Near the rear or west end of the machine, the plaintiff was kneeling just prior to his injury. The top of the two upper cogs is guarded with an iron strap conforming to the contour of the cogs and covering one-half of their circumference. The two right-hand cogs at the corner indicated mesh inwards, so that any object touching them at their point of contact and coming from the west would be drawn between them and crushed.

At the east end of the machine the operator stands and feeds the lumber into the machine. It is customary to start the machine by taking hold of the lever just to the right of the large pulley on the right of the machine; and by applying that lever and the idler, which is attached to it, to the main power belt, which extends from the pulley near the roof to one attached to the countershaft on the floor, power is communicated to the belts on the right of the machine, and which operate the knives alone. To the left of the machine is another driving pulley around which is a belt which goes around the driven pulley at the west end of the machine. The belt and pulleys on the left side of the planer operate the cogs and rolls which carry the lumber through the machine. The power is applied to the feed belt by taking the left-hand lever, to which is attached an idler, and pressing it upon the belt in question. The feed rolls are not supposed to be placed in operation unless the left-hand tightener is applied to the feed belt. The distance between the right-hand and the left-hand tightener is about six feet.

Some of the plaintiff's witnesses testified that the feed rolls and cogs on the planer started of themselves by the application of the right-hand or main tightener alone, and without the application of the feed tightener, which was intended for

that purpose. Plaintiff's witnesses also testified that there was a crack in the bed of the machine near the front rolls, that the driven pulley on the left-hand side wobbled, that the feed belt tightener was too short, that the belt operating the feed gear was too tight, and was in the habit of running up on the five-eighths inch flange on the driven feed gear pulley on the left-hand side. There was testimony tending to show that the planing mill in question was an old pattern, and out of repair; that the frame thereof had been broken and mended; that its shafts, pulleys, and gear were badly out of line; that the driven pulley on the feed gear belt wobbled, and the belt frequently ran on its flanges; that the feed gear lever had been broken and shortened; that in rainy weather the feed gear belt ran in the water, and was wet and unreliable and caused shavings and other sticky matter to adhere thereto, and such belt was, by reason of being wet, subject to the elements and contracted and expanded.

There was some evidence to the effect that said machine had been in an improper condition and the feed gear thereof had been customarily starting itself automatically for months before plaintiff was injured; that appellant knew of all of said defects and dangers, and the respondent had no knowledge thereof; and that the appellant failed and neglected to warn or caution the respondent against danger from automatic starting. Two experts testified for the plaintiff that a machine which starts automatically, and is in the condition described by the plaintiff's witnesses, is not in proper repair, and that it was practicable to cover cogs such as the ones which injured the plaintiff's hand. One witness testified that it was customary in the state of Washington to hood such cogs, but the same witness admitted that he did not know the custom as to hooding cogs in Ballard where this mill was situated.

The plaintiff was twenty-five years old at the date of his injury. He had been a millwright for about nine years, and had worked around sawmills since childhood. The greater

part of his experience as a mill hand had consisted in running an edger. Respondent testified that he expressly told the foreman, at the time of his employment, that he was not a planing-mill man; that he was only hired to "fill in with" for a few days; that he had been at work on the machine five days before the injury; that his experience with planing machines of any kind was very limited; and that he was without any as to a machine like the one in question, all of which the appellant knew. He was familiar with the situation of the particular cogs, and knew that they would injure his hand if it came in contact with them. He had worked upon the planer in question a little over five days before his hand was injured. He had started up the machine a number of times himself, and knew the noise that it made with the feed gear in operation, and its sound when at rest. He had frequently seen the knives on the machine changed. The plaintiff claimed, however, that on the occasion of his injury he did not know that the machine was to be started up.

Between ten and eleven o'clock on the morning of March 11, 1903, the day of his injury, the plaintiff had cut all of the lumber he had on his trucks, and shut his machine down. He went to the back end of the machine on the south side. Avey, one of appellant's foremen, then ordered him to clean out the shavings from under the machine. This he proceeded to do at the northwest corner. Paul Kirkendall, a fellow laborer of respondent, worked at the trimmer to the west of the planer. Just before his conversation with Avey, respondent asked Kirkendall if he was going to change the knives on the machine, and Kirkendall replied that he did not know. The attitude of plaintiff immediately before his injury was as follows: He was kneeling upon the floor on one knee, with his head partly under the northwest corner of the machine, with his right hand engaged in pushing shavings up the blower, and with his left hand resting on the bed of the machine, between eight inches and one foot from the point of contact of the two inmeshing cogs.

It appears that, at this time, Paul Kirkendall, the trimmer-man, had been ordered by Avey, the foreman, to leave his position as trimmer and change the knives on the planer. In order to do this, it was necessary to run from the machine the last board of the truck load Williams had been cutting. Kirkendall accordingly went around to the east end of the planer and applied the main tightener. There was a sharp conflict of evidence as to whether Kirkendall had started up the feed rolls by the application of the main tightener alone, or whether he had put them in motion by applying the feed lever. The plaintiff testified that, at the time his hand was caught in the cogs, he looked toward the front end of the machine and saw Kirkendall standing at the main idler at the northeast corner applying it to the power belt. Plaintiff also testified that, while he was in the attitude described, using his right hand, and with his left hand resting on the bed of the planer, his attention was attracted by a noise of some kind; that he was so startled and frightened by the sound that, in attempting to arise from his position on the floor, he put his hand into the cogs, where it was cut off. He also stated that he did not intend to put his hand into the cog, and that his motion in so doing was involuntary, the cog-wheels being not much higher than his waist; that he was under said machine and not expecting it to start, when he heard the machine in motion; that mechanically he made a natural, quick movement to get from under the machine and away from danger, and in doing so, and while his head was under the machine, his hand was moved some eight inches instantly and mechanically, and caught in these open, dangerous, and unguarded cogs, so running automatically; that had the cogs in which plaintiff was injured not started until the lever on the south side (which operated them and tightened the belt that propelled said cogs) been pulled forward and the idler placed upon that belt, plaintiff would have had ample time to have escaped from under said machine safely, and to have walked many feet while said cogs

remained at rest; that the automatic starting of these feed gear cogs put plaintiff in immediate peril; that they could have been protected and guarded with a trifling expense.

The testimony of the defense was directed toward the following issues: Witnesses testified that the automatic starting referred to was not unusual; that the machine in question was in perfect order at the time of the injury to the plaintiff; that it was unusual and impossible to guard expansion gears such as the ones in question; that all modern planers are provided with open cogs; that the condition of the belt, the mended bed, and the short lever, had nothing to do with the automatic starting of the machine, and that the planer would not sart automatically under any circumstances with the pressure of the rolls upon a board. At the close of the plaintiff's case, the defendant moved for a verdict of nonsuit on the ground that the plaintiff had failed to show any negligence which contributed to the plaintiff's injury; that the plaintiff's contributory negligence was the proximate cause of his injury; that his injury was the result of assumed risks, and was also caused by the negligent act of a fellow servant. A motion for nonsuit was made and denied, and an exception allowed. The defendant, at the end of all the testimony, requested the court to charge the jury that it was their duty under all the evidence to render their verdict in favor of the defendant. This the court declined to do, and the defendant duly excepted. The jury returned a verdict in the sum above mentioned. A motion for new trial having been interposed and overruled, judgment was entered upon said verdict. From this judgment defendant appeals.

The appellant assigns but two errors; first, that the court erred in refusing to grant defendant's motion for nonsuit; second, that the court erred in refusing to grant defendant's request for a peremptory instruction. These errors are supported in argument under four heads, as follows: (1) That the plaintiff was guilty of contributory negligence preclusive of recovery; (2) that if there was negligence on the part of

the defendant, it was not the proximate cause of plaintiff's injury; (3) that the proximate cause of the injury to respondent was the negligent act of a fellow servant mingled with his own contributory negligence; (4) that respondent assumed the risk of dangers which caused his injury.

To charge a plaintiff in an action of this character with contributory negligence, it must appear that some act or omission on his part caused or contributed to the cause of his injury, and that such act or omission on his part was not such an act or omission as would have been done or permitted by a person of ordinary prudence under the same circumchances. As to whether a person of ordinary prudence would have done or omitted to do such act, presents a question which is sometimes for the court and sometimes for the jury to decide. If from the evidence and facts in a given case, the court can say that ordinarily intelligent, reasonable, and fairminded men would not and ought not to believe that said plaintiff was acting as an ordinarily prudent man would have done under the same circumstances, then it is a question for the court, and a motion for a nonsuit, judgment or directed verdict should be sustained. On the other hand, if the evidence, facts, and circumstances are such that the court believes that such men might properly differ as to whether or not the conduct of a plaintiff was such as might have characterized a man of ordinary prudence surrounded by the same conditions and circumstances, then it is a question to be submitted to the jury. Hence, it is for us to decide whether or not the facts and circumstances revealed by the evidence here were such that ordinarily intelligent, reasonable, fairminded men might differ on the question indicated.

The plaintiff, at the time and immediately prior to the accident, was in a stooping or kneeling posture, with his head and shoulders projected under a large, powerful, and dangerous machine. This machine was suddenly and, to him, unexpectedly, set in motion. He says he was startled by this occurrence, and suddenly and impulsively moved his hand in

such a way as to bring it involuntarily in contact with the revolving cogwheels. He had known of these cogwheels and of the danger appertaining thereto; but at this instant, with his head under the machine and his face turned from said wheels, and a portion of the machine being between his head and said wheels, the existence of such dangerous cogwheels was for the moment forgotten. That he should suddenly move his hand or throw it up in order to assist in getting from under the machine and rising to his feet, would seem to be a very natural movement for a person so situated to make under the circumstances mentioned. At least, we cannot say, as a matter of law, that no ordinarily intelligent, reasonable, fair-minded man would think such a movement consistent with what a man of ordinary prudence might have done under the same circumstances.

In the light of the substantial, competent evidence on behalf of the plaintiff touching the situation and circumstances, and the admitted facts and conditions relative thereto, we think that the question of whether or not the plaintiff was guilty of contributory negligence was a proper one for the jury; and the latter having passed upon the same adversely to appellant, we are bound thereby. That momentary forgetfulness of a known danger does not of itself, as a matter of law, necessarily constitute contributory negligence on the part of the one injured by reason of said danger, has been heretofore held by this court. *Jordan v. Seattle*, 26 Wash. 61, 66 Pac. 114.

As to the question of proximate cause, it cannot be, and is not, by appellant, seriously argued that the maintenance of these exposed cogwheels, where respondent and other workmen must necessarily work in close proximity to them, was not in itself negligence without which this accident would not have occurred. The presence of these exposed cogs certainly contributed to the proximate cause of plaintiff's injury. It must also be remembered that there was evidence on the part of the plaintiff which tended to establish the fact

that, if the machine had been in proper repair, the cogwheels would not have started for some moments after the other part of the machine was in operation, and plaintiff would have had plenty of time to have removed from the dangerous position which he was in. From the evidence adduced in behalf of respondent, it appears that the proximate cause of this injury was made up of three elements: (1) The maintenance by the mill company of the cogwheels in an unnecessarily and improperly exposed condition when it was easy and practicable to cover them at slight expense; (2) the unexpected starting of a portion of the machine by respondent's fellow workman, Kirkendall; (3) the defective condition of the machine and its appurtenances, by reason of which these cogwheels automatically and unexpectedly started when the lever and idler were applied, which should have set in motion the planing knives only.

Two of these elements thus contributing to the proximate cause are chargeable to the negligence of the defendant. The other was the fault of respondent's fellow servant. Where a defendant's negligence is shown to have contributed with that of a third person to produce the proximate cause of an injury to another, such defendant is chargeable as if solely responsible for the proximate cause. *Eskildsen v. Seattle,* 29 Wash. 583, 70 Pac. 64. If a fellow workman of plaintiff, by starting the machine at the time he did, also contributed to the proximate cause, this would not relieve the appellant, as it has been heretofore held by this court that, where the negligence of the master and a fellow servant combine to create a proximate cause, the master is chargeable. *Ralph v. American Bridge Co.,* 30 Wash. 500, 70 Pac. 1098; *Howe v. Northern Pac. R. Co.,* 30 Wash. 569, 70 Pac. 1100.

The determination of the question of assumed risk, presented by the case, is not without difficulties. Ordinarily a servant employed to work about dangerous machinery assumes (in the absence of a statute otherwise providing) the open, apparent, and obvious dangers thereof, and the dangers which

he knows, or ought to know, to be naturally or necessarily incident to his employment; and is called upon to protect himself against such dangers and those of which, by the exercise of ordinary prudence and care, he ought to know, as a workman of ordinary prudence would do under the same circumstances. In this case the dangerous condition of these exposed cogwheels was open, apparent, and known to him; but he testified that he did not know of the defects in the machine which, it was testified, caused these cogwheels to immediately start when the other portion of the machine was set in motion in the manner that it was started at this time by a fellow workman; and he also testified that he had worked about this machine only a few days, and knew nothing of the tendency of these cogwheels to start automatically, or that they had ever done so theretofore. While the servant assumes those dangers which he knows, or ought to know, to be naturally or necessarily incident to the employment in which he is engaged, yet he does not assume the danger of those that are not open, apparent, or obvious, and which he does not know of or have reason to expect as incident to his work.

The question presented to the court is this: Can we say, as a matter of law, that the sudden, unexpected starting of these cogwheels automatically, by reason of some defect or improper arrangement of the machinery, was a danger of which respondent knew, or which he should have anticipated and guarded against as an incident to his work about said machine? We must answer this in the negative. If it were established that he knew this part of the machine to have been in the habit of starting automatically, or that the condition thereof was such that automatic starting was liable to occur; or if the record showed unquestionably that his experience about the machine or his surroundings and opportunities were such that, by the exercise of ordinary prudence and observation, he should have known of the likelihood of such an occurrence, a different question would be presented. But there being competent, material, and substantial evidence that

this part of the machine, by reason of its defective condition, had been in the habit of starting automatically, and was liable to so do, and that the owner knew of these things, and that respondent did not, we cannot overlook such testimony. The evidence tending to show all these matters was sufficient to raise a question for the jury, and the latter having determined the same, and its verdict being upheld by the trial court, we must be bound by its finding thereupon. Some of the testimony on behalf of respondent is very unsatisfactory, and much of it is contravened by strong evidence in support of appellant. But as respondent's contention as to every one of the questions raised on this appeal was supported by a sufficient amount of competent, material evidence to carry the case to the jury, and, if believed by them, to justify a verdict for him, which the trial court sustained, we cannot set the same aside, but are constrained to uphold such verdict.

The judgment of the superior court is affirmed.

MOUNT, C. J., CROW, HADLEY, and FULLERTON, JJ., concur.

DUNBAR, J., concurs in the result.