## No. 8762.

### VELOTTA *v.* YAMPA VALLEY COAL COMPANY.

1. NEGLIGENCE—*Must be Proven,* and is not to be inferred from the mere occurrence of an accident.

2. *Presumptions.* Action for the death of a servant, attributed to negligence in the appliances of the master. The servant had no part in the construction, maintenance or control of the appliances the giving away of which occasioned his death. *Held* that the maxim *res ipsa loquitur* applies, raising a presumption of negligence which it was incumbent on the master to meet and overcome.

This maxim applies wherever the obligation of due care is imposed upon one party alone.

Where there is no witness to an accident in which the servant comes to his death, and the servant was, at the time, at the place prescribed to him for the discharge of his duties, it is presumed, in absence of evidence to the contrary that he was engaged in the performance of his duties.

3. EVIDENCE—*Opinions,* of witnesses having no expert knowledge upon the subject to which their testimony is directed are not controlling upon the jury.

4. *Custom.*  Action for negligence in operating by means of a steel
        cable, a tramway upon an incline, so that the loaded cars
        descending, drew up the empties.  Where the two trains passed
        there was a curve in the track, and to conform the cable to the
        track there were several sheave wheels, or pulleys, fastened
        to the ties.  Negligence in the attachment of these sheaves to
        the ties was alleged, and that by reason thereof, the cable flash-
        ing from the course of the track occasioned the death of an
        employee.  A witness for the defense, after testifying as to
        the manner of this attachment, was asked "Is that the cus-
        tomary manner in which vertical sheaves, and forty-fives, (set
        at an angle of forty-five degrees) are fastened in the mines
        you have worked in", and answered in the affirmative.  The
        witness had worked as a carpenter in a mine in Wyoming, but
        did not know what was the custom there as to the manner
        of such attachment.  All other testimony as to the custom was
        from witnesses no better qualified.  *Held* that the testimony
        tended neither to establish a custom nor a proper and sufficient
        structure.

*Error to Denver District Court, Hon. John H. Denison,*
*Judge.*

Mr. JOHN T. BOTTOM and Mr. MILNOR E. GLEAVES, for
plaintiff in error.

Mr. JULIAN G. DICKINSON, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

The parties, plaintiffs and defendant occupy the same
relative positions in the trial court and in this court.  The
plaintiffs' action is for damages occasioned by reason of
the accidental death of their son, Tony Velotta, a boy of
fifteen years of age, while serving as an employee of de-
fendant company.  At the close of all testimony offered by
both plaintiffs and defendant, the court directed a ver-
dict for the defendant, and this is the error assigned.

The defendant company was engaged in the operation
of a coal mine in Routt county.  It used a ground tram-
way extending for a distance of about three-eights of a
mile between the mine and the railroad track, where the
coal was loaded for shipment.  This tramway seems to

have something of a heavy down-grade, following the slope of the mountain, from the mine to the railroad. Six loaded cars were sent down from the mine to the railway, while six corresponding empty cars were sent at the same time in the opposite direction, to the mine. These cars were operated by means of a heavy steel cable, controlled by an engine and drum, located at the mine.

The six loaded cars going down, and the six empty cars going up, passed at a point midway between the mine where they were loaded, and the railroad where they were dumped. At this point there was located a switch by means of which the cars were enabled to pass. This switch was at a point where the track formed a curve, following the formation of the mountain which had been excavated for the purpose of laying the track. The convex of the curve was next to the mountain, and on the outside of the track, from which side the mountain descended abruptly.

To keep the cable from the ground there were rollers fastened to the ties, and to conform the cable to the course of the track following this curve, there were also several sheave wheels or pulleys, fastened to the ties. There was an iron switch lever installed on a small platform, near the track, and on the inside of the curve, used when necessary to operate the switch. This switch was so constructed that it operated automatically, as a rule, by means of the flange on the car wheels. This lever was in such location that if the cable was for any cause to leave the sheave wheels which held it to the track following the curve, it would by reason of its own weight, and the weight of the cars attached, naturally flash past the lever and platform, into a straight line. When the cars passed each other they were slightly above the platform and lever, and at such time there was no cable down as far as the switch, but at all other times the cable was taut, extending down the track, either pulling the empty cars up, or letting the loaded cars down.

Across from the switch lever and platform, and against

the mountain side were two signal wires, leading to the engineer's station at the top. In case of giving a signal, the boy if standing at the place which he was instructed to remain while not performing a duty, would be required to cross the cable and tracks to connect the wires. Tony Velotta, the deceased, was employed to attend this switch when necessary, and to oil the sheaves and to keep the tracks clear of coal, and seemingly to give signals, but when and for what purpose does not appear.

The evidence discloses that Tony was instructed to keep on the side of the track opposite the switch lever and platform, when not in the performance of his duties. No person saw the accident. The boy was seen at his station just previous. When found he was unconscious, with his legs broken below the knees, with a wound on the head, and because of which injuries he died within a few hours afterward.

At that time the cable was found to be torn loose from the sheaves around the curve, some of the sheaves had been severed from their fastenings, some broken, and at least one, hurled a great distance. It is plain that the cable when thus released from its moorings, was suddenly thrown into a straight line and struck the boy, thus causing his injury and death.

The negligence pleaded was the maintenance of defective ways, works and machinery, and neglect and failure to provide a reasonably safe place for the servant in which to work, and particularly in view of the tender years of the deceased, and specifically, "said defendant continued to use and keep in operation and use the said machinery, engines and appliances when, and long after, they knew, or should have known as aforesaid, the same were unsafe, insufficient and defective, and failed to provide the usual and necessary safeguards as aforesaid, when on the date aforesaid, because of the negligent and improper operation and use of the said cable by the defendant company, and because of the improper and insufficient moorings and fastenings of the said cable, and because of the wheel and

pulleys holding the said cable to the said curve or bend of the track were insecurely and negligently nailed, and otherwise fastened to the track and the ties thereof, and because of the decayed and aged condition of the ties thereof, to which the pulleys were moored and fastened.

Knowledge of such condition by defendant, and want of knowledge by deceased were also alleged.

The answer was the usual general denial of negligence, alleged contributory negligence, and assumed risk.

The contention of the defendant in error is that there was no evidence whatsoever of negligence on the part of the defendant, and therefore under the rule of this court, it was the plain duty of the court to direct a verdict for the defendant.

There is no better settled, nor more oft repeated general rule of American courts, than that negligence must be proven, and that it may not be inferred from the mere fact of the accident, but the law recognizes certain legal presumptions from particular facts in certain classes of cases, which are entitled to consideration in this case.

The sheave wheels which carried the cable around the curve where the accident occurred, and which held it out of the natural straight line, were fastened to the ties by means of iron spikes driven into, and perhaps through, the ties. The pulling or breaking away of such fastenings, so releasing the cable and causing it to veer suddenly, and of necessity with great force, to the natural straight line, by reason of its own weight, and the weight of the load it was carrying, was clearly the cause of the injury.

It appears that at the time of the discovery of the accident, the six loaded cars were standing at a point about three hundred yards below the switch, having been lowered by the cable. Lowering the cars to that extent, and to the extent of the weight of the cable, which appears to have been about an inch in diameter, constituted a very great strain on the sheaves, and their fastenings. Due care, demanded that these sheaves, the ties to which they were attached, and the method and manner of their fas-

tening should be of sufficient size and strength, with proper and sufficient attachments, to bear the strain reasonably to be expected from their operation.

The ties were evidently very light, the only definite testimony upon this point being that they were about four inches thick. On top of the ties were three-inch planks, to these were attached the sheaves, by means of spikes driven into and perhaps through the planks and ties. There is testimony that at least some of such spikes were eight inches in length. But it appears that if the spikes were driven through the ties, they were not turned down nor clinched, nor in any other way secured by any plates, bolts or other fastenings.

It is plain therefore that if the ties, the manner of fastening the sheaves to them, or the sheaves, were not reasonably and prudently sufficient to carry the great weight for which they were intended, the defendant is guilty of negligence.

It is contended by counsel for defendant that it is established by the proof that the manner of fastening the sheaves to the ties was the usual and customary method in such a case. This was attempted by two witnesses, neither of whom were shown to possess any special or expert knowledge upon that subject, and therefore were in no better position to judge of such matters than were the jurors. The witness Rice was a carpenter and appears to have worked as such at two other coal mines.

Over the objection of the plaintiff the witness was permitted to testify, after saying that the ties were about four inches thick, that a three-inch plank was placed on the tie, and an eight inch pointed spike driven through the. plank and the tie, in fastening the sheave, as follows:

"Q. Is that the customary manner in which vertical sheaves and forty-fives (set at an angle of forty-five degrees), are fastened in the mines that you have worked in? A. Yes, sir."

This is not such evidence as was proper to go to the jury, for the specific instances cited, may have been at-

tended by negligence, and it in no sense tends to prove a custom nor even a proper method.   20 Am. & Eng. Enc. of Law, 85.

The witness testified that he worked as a carpenter at a mine at Rock Springs, Wyoming, and upon the question of custom testified as follows:

"Q.  Don't you know that it was the custom at the time you left Wyoming, at the time you were at Superior, that on curves, to clamp the sheave wheels that fastened upon the ties?   A.  I don't know.

Q.  You don't know what the custom was there, do you?   A.  No, sir."

So that the testimony of this witness tended neither to establish a custom nor a proper or sufficient structure.   The other witness did not even cite instances.   So far as the record discloses, the jurors must be presumed to be as well qualified as those witnesses, to judge from the facts and circumstances stated, as to whether or not the construction was insufficient for the purpose.   Clearly it cannot be said as a matter of law that the ties were of sufficient size and strength, or that the sheaves were properly or sufficiently attached thereto, to withstand the great strain reasonably expected to be placed on such construction. This was in this case a question for the jury, to be determined in the light of their judgment and experience, and from all attendant facts and circumstances.

It appears from the record that the boy Tony had no control over, and nothing whatsoever to do with, the use, construction or repair of the ties, plates, sheaves or fastenings, the giving way of which, admittedly caused the injury.   These were under the exclusive control of the defendant.

In such case the doctrine of *res ipsa loquitur* applies and there was a legal presumption of negligence, which it was the duty of the defendant to meet.

Mr. Lawson in his work on Presumption Negligence, states the rule to be:

"But when the thing is under the management of the

defendant, and the accident is such as ordinarily does not happen if those who have its management use proper care, a presumption of negligence arises from the happening of the accident."

The author cites many illustrative cases in support of this rule. The reason for the rule is that all information as to the construction and working of its machinery, and of the particular equipment in fault is in possession of the company, as are all means of rebutting the charge of such negligence, entirely in its power. An outsider can hardly be expected to prove that in the construction of the machinery, or in the use of it at the time the injury occurred, the company was guilty of negligence. He can only prove that the injury occurred through the operation of the company's machinery, and having done this, it is but proper to call on the defendant to show that he was not negligent, that he employed careful and competent servants, and that he had used improved appliances, or there was not negligence in operation.

A more elaborate and particular statement of the rule, well sustained by authority, is found in 29 Cyc. 590, as follows:

"While as already shown, negligence is never presumed and cannot be inferred from the injury alone, it may be inferred from the evidence of the injury, in connection with the facts and circumstances under which it occurred. In many cases it is laid down that negligence may be presumed where the injury so caused by an act which in the ordinary course of things would not have resulted in injury if.due care had been used in its performance. Perhaps a more accurate statement is that where defendant owes to plaintiff a duty to use care, and the thing causing the accident is shown to be under the management of defendant or his servants, and the accident is such that in the ordinary course of things does not occur if those who have the management or control use proper care, the happening of the accident in the absence of evidence to the contrary is evidence that it arose from the lack of requi-

site care.  Even under these circumstances the happening of the accident is merely *prima facie* evidence and not conclusive proof of negligence.  The maxim *res ipsa loquitur* was originally limited to causes of absolute duty, or an obligation practically amounting to that of insurer under a contractual relation, but has been extended to actions sounding in tort where no contractual relation existed. So that when the physical facts of an accident themselves create a reasonable probability that it resulted from negligence the physical facts are themselves evidential and furnish what the law terms 'evidence of negligence' in conformity with the maxim *res ipsa loquitur;* and where the injury arises from some condition or event that is in its nature so obviously destructive of the safety of persons or property and is so tortious in this quality as in the first instance at least to permit no inference save that of negligence on the part of the person in control of the dangerous agency the happening of the accident raises a presumption of negligence.  To render the maxim applicable the thing causing the injury must be shown to have been in the exclusive control of defendant; and the rule has no application where the injured person and the alleged negligent person were both in the exercise of an equal right and where each is chargeable with the same degree of care. Nor does it apply where the cause of the accident is known, or where the injury was the result of two or more concurring causes."

The record discloses in the case at bar, that the construction, control and operation of the machinery which occasioned the injury, were exclusively with the defendant, its agents and employees, and that the deceased has no connection therewith, and manifestly could have no knowledge thereof.  The cause of the accident is unknown, and the deceased was at the designated place of his employment, and in the absence of evidence to the contrary, must be presumed to have been engaged in the performance of his duty.

In *Kan v. Cap Co.*, 139 Calif. 30, 73 Pac. 164, where the

damage was by flooding goods, alleged to have been caused by water escaping from an engine and boiler on an upper floor, and where the defendant was charged with negligence in the selection, management and control of the engine, boiler and pipes connected therewith; the trial court instructed generally that the burden of proof was on the plaintiff to establish negligence, and likewise instructed the jury that the mere fact of the overflow of water from the boiler, under the circumstances, was *prima facie* evidence of negligence. Commenting on this instruction the court said:

"It is contended that these instructions, and others of similar import, are in direct conflict with the instruction mentioned in the previous paragraph to the effect that the happening of the accident was *prima facie* evidence of negligence. This contention, however, is founded upon a failure to perceive the effect of the presumption as evidence. The negligence could have been established by direct proof of some act which, in its nature, was negligent, or it could have been established, as it was established, *prima facie,* by the mere proof of the happening of the accident and the circumstances surrounding it, from which the presumption of negligence arose. This presumption is itself evidence in the case, and it does not change the rule as to the burden of proof. It is merely the evidence by which the plaintiff undertook to establish the fact which they were bound to prove. It still remained the law that, upon the whole evidence, the plaintiffs must have the preponderance in order to succeed."

In *Larkin v. Reid Ice Cream Co.,* 161 App. Div. 77, 146 N. Y. Supp. 230, it was held:

"Defendant was charged with liability for damage from its horse running away because of the bit falling out of its mouth so that the driver could not restrain it. The bridle, which was intended to permit feeding in harness, did not have the bit-rings held up on both sides to the jaw-straps by buckles, but on the one side the strap was attached to the ring by a snap-hook so that the bit could

be disconnected when feeding, and the snap-hook gave way and released the bit, but it was not shown whether it became disconnected because of the worn condition of the snap-hook, or because the driving rein was attached to the ring in front of the snap-hook, and worked it loose in crossing over it. *Held* that the release of the bit was an occurrence which, ordinarily would not happen without negligence, so that proof of the occurrence *prima facie* showed negligence, even if plaintiff could not show which of the causes released the bit."

The rule of *res ipsa loquitur* is not limited to common carriers but exists wherever the circumstances impose upon one party alone the obligation of due care. *Sauer v. Eagle Brewing Co.,* 3 Cal. App. 127, 84 Pac. 425; Cooley on Torts, § 799.

The prevailing judicial opinion is that the maxim of *res ipsa loquitur* applies to the same extent in case of injuries to servants as in other cases of personal injuries. 8 Enc. Evidence, 890, citing *La Fernier v. Wrecking Co.,* 129 Mich. 596, 89 N. W. 353; *Stewart v. Carpet Co.,* 138 N. C. 60, 50 S. E. 562; *Cox v. Gas Co.,* 17 R. I. 199, 21 Atl. 344; *McCray v. Galveston, etc., Co.,* 89 Tex. 168, 34 S. W. 95; *Houston v. Brush,* 66 Vt. 331, 29 Atl. 380; *Howe v. N. P. R. R. Co.,* 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565. See, also, *Palmer Brick Co. v. Chenall* 119 Ga. 837 47 S. E. 329, and Thompson's Commentaries on the Law of Negligence, §§ 7646 to 7648, inclusive.

The rule as here applied to this case and to the class of cases cited, is both salutary and just. Otherwise common carriers, operators of machinery appliances, and users of buildings, ships, etc., whose negligent construction, use and operation, may cause injuries to those wholly disconnected with the use or control thereof whether employees or not, may unjustly escape liability.

These may say in such case, "our negligence was the cause of the injury to the body, or death, as in the case at bar; we alone are in possession of knowledge of the

negligence which caused the injury. The burden is on the injured to establish such negligence. Presumptions are all in our favor, regardless of the circumstances of the accident. You can have no possible knowledge but we know and may hold our tongue, and for that reason you must be denied that which is justly due you by reason of our negligent acts."

Such a rule cannot find support in either reason or justice. The facts and circumstances of this case in the light of the foregoing authorities, establish the legal presumption of negligence on the part of the defendant, and the court erred for this reason in refusing to submit the cause to the jury, under proper instructions.

The judgment is reversed and the cause remanded with instruction to proceed in accordance with the views herein expressed.

The judgment is reversed.

*En banc.*

White, C. J., Garrigues and Bailey, J. J., dissent.